IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

VINCENTE JUAREZ HUERTA,        )
                               )
            Petitioner,        )
                               )
      v.                       )   1:14CV306
                               )
FRANK L. PERRY,                )
                               )
            Respondent.        )

ORDER AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Petitioner Vincente Juarez Huerta, a prisoner of the State of North Carolina, brings a Petition [Doc. #2] seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On May 18, 2011, in the Superior Court of Guilford County, a jury convicted Petitioner of trafficking in more than 400 grams of cocaine and maintaining a dwelling for the purposes of keeping and selling controlled substances. (Petition §§ 1-2, 5.) He received a sentence of 175 to 219 months of imprisonment. (Id. § 3.) Petitioner pursued a direct appeal, but it proved unsuccessful after the North Carolina Court of Appeals found no error and the North Carolina Supreme Court denied discretionary review. State v. Huerta, 727 S.E.2d 881 (N.C. App.), rev. denied, 366 N.C. 408, 735 S.E.2d 189 (2012). Petitioner also unsuccessfully pursued a Motion for Appropriate Relief (MAR) in the trial court and the North Carolina Court of Appeals before filing his Petition in this Court. Respondent filed a Motion for Summary Judgment [Doc. #5], which is now pending before the Court.[1]

---

[1] Also pending is a Motion [Doc. #6] by Respondent seeking to file a brief in excess of this Court's page limitation. That Motion will be granted and Respondent's Brief [Doc. #7] will be accepted and considered.

Facts

The facts of the case, as set out by the North Carolina Court of Appeals in denying Petitioner's direct appeal are as follows:

> In April, 2003, Detective Alexander Williams of the Greensboro Police Department was assigned to the Department's vice and narcotics section, which focused its attention upon "mid-level, higher level drug dealers" and "major drug traffickers that are operating in [the] area." On the afternoon of 23 April 2003, Detective Williams was contacted by Detective Larry Marshall, a colleague in the vice and narcotics section of the Greensboro Police Department, who was, at that time, assigned to work as a liaison with the United States Drug Enforcement Agency. On that occasion, Detective Marshall gave Detective Williams a list of street addresses in Greensboro that had been determined to be of interest during a recent DEA investigation, including 1409 Dorsey Street.[2] As a result, Detectives Williams, Marshall, and D.D. James went to 1409 Dorsey Street for the purpose of investigating the illegal activities that were alleged to be occurring at that location.
>
> As the officers approached the Dorsey Street residence, which was a "very small" single-story house with an attic above the hallway, Defendant arrived in a pick-up truck and parked in the driveway. After Detective Williams, who had observed an Hispanic woman and several children in the house, identified himself as a law enforcement officer, Defendant stated that he lived in the house and that the individuals in the residence were his wife and children. When Detective Williams asked if Defendant would speak with them, Defendant invited the officers inside.
>
> After the investigating officers entered the house, Defendant and his wife displayed their drivers' licenses. At that point, Detective Williams explained that they "had a complaint about his residence being involved in narcotics, or narcotics activity, and at that point just asked if he would mind if we searched his house for any narcotics." Defendant consented to the requested search.
>
> As the officers began to search Defendant's residence, Detective Williams asked Defendant if there were any guns in the house. In response to this inquiry, Defendant told Detective Williams that he had a firearm in his bedroom closet. At that location, investigating officers found a .40 caliber

---

[2] The Dorsey Street address had also been the subject of a citizen's complaint in 2002 which alleged that drug sales might be occurring at that location.

pistol and in excess of $9,000.00 in cash. Subsequently, investigating officers also found "two vehicle titles," one of which listed Defendant as the owner and gave the Dorsey Street residence as his address; "paperwork, and ... two loaded .40 caliber magazines" in the bedroom closet as well. Defendant admitted that he was in the United States unlawfully; acknowledged that he had purchased the gun illegally; stated that he, his wife, and children had lived at the Dorsey Street address for about three years; and claimed that the cash that the investigating officers had found had been earned by him and his wife.

After Detectives James and Marshall searched the ground floor, Detective Williams stood on a chair, moved a piece of plywood covering an opening leading from the hall into the attic, and looked into the attic. At that point, Detective Williams saw "a book-sized greenish-colored package" which appeared "to be a kilogram-sized package of narcotics" "within arm's reach, not very far from the opening of the attic space." After Detective Marshall opened the package, Detective Williams "observed that it contained [a] white powder substance, which [he] suspected to be cocaine."

At that point, Defendant was placed under arrest, and Detective Williams conducted a further search of the attic. During that process, Detective Williams found a plastic bag containing ten individually wrapped packets of white powder and a "grocery bag contain[ing] two large plastic ziplock bags," each of which "contained [twelve] individually packaged amounts of the same white powdered substance." Although the officers kept the powder for testing, they decided to have the packaging material subjected to fingerprint analysis. As Detective Williams explained:

> .... In order to have these items fingerprinted, you can't submit these items with the cocaine in the packaging.... [W]e would have packaged, for example, the kilogram amount, the book-sized amount I described, that would have been one package. One of the grocery bag items I described, that would have been a second package. And then the third grocery bag would have been a third package.

Patrick Sigafoos, a forensic specialist with the Greensboro Police Department, tested the packaging materials for the presence of fingerprints and found fifteen latent prints on a few of the plastic baggies. Amy Wild, a fingerprint examiner with the Greensboro Police Department, examined the latent fingerprints and determined that only five of them were identifiable and that none of the identifiable prints belonged to Defendant.

Special Agent Sheila Bayler of the State Bureau of Investigation tested the powder seized from Defendant's residence. After receiving the powder in

three separate plastic bags, Special Agent Bayler weighed the three bags and performed initial chemical testing on the material contained in each bag, ultimately determining that the response of the powder in each bag to the chemical reagent was "consistent with each other." At that point, Special Agent Bayler combined the material contained in the three bags, explaining that, "when we are submitted evidence, if it is all collected from the same location, packaged in the same manner, appears the same, and gives us the same preliminary test, we combine the material for analysis to do one confirmation of the identity." After combining the contents of the three bags, Agent Bayler performed an infrared spectrophotometer test and determined that the material in the bags contained cocaine hydrochloride, which is "typically what people think of as powder cocaine," that had a combined weight of 1,729.5 grams. Although Special Agent Bayler tested the material in the bags for "a very broad range of [controlled and non-controlled] substances," she did not find any substances in the mixture other than cocaine hydrochloride. According to Detective Williams, the cocaine seized from Defendant's residence would have had a street value of about $50,000.00 in 2003.

Huerta, 727 S.E.2d at 883-85 (footnote in original).

### Claims

Petitioner raises six potential claims for relief. The first is that the trial court erred in admitting evidence that the white powdered substance seized by officers was cocaine when no confirmatory test was conducted. (Petition, § 12(a) Ground One.) The second is that Petitioner's sentence is grossly disproportionate to his crime in violation of the Eighth and Fourteenth Amendments of the United States Constitution. (Id. Ground Two.) Petitioner's third claim is that he received ineffective assistance of counsel at the trial and appellate levels and that the state courts violated his rights under the Vienna Convention. (Id. Ground Three.) Fourth, Petitioner claims that the State violated his rights by not disclosing that Petitioner did not live in the residence where authorities located the drugs. (Id. Ground Four.) In his fifth claim, Petitioner alleges that the trial court erred by admitting a handgun

and ammunition into evidence even though they were not related to drug activity. (Id. Ground Five.) Finally, in his sixth claim, he asserts that the trial court erred by denying his motion to dismiss the case against him due to insufficient evidence. (Id. Ground Six.)

Discussion

Respondent's primary argument as to most of Petitioner's claims is that they are non-exhausted and/or procedurally barred. As set out above, Petitioner's first claim is that the trial court violated his federal due process rights by admitting evidence that the white powder seized by the police was cocaine despite a lack of proper confirmatory testing. Petitioner raised this claim during his direct appeal, but did so under state, not federal, law. Therefore, Petitioner failed to raise and exhaust any federal constitutional claim in the state courts. See Baldwin v. Reese, 541 U.S. 27, 29 (2004) (holding that petitioner must fully and fairly present all his federal claims to each level of review in the state system); Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004) (finding that petitioner must place "both the operative facts and the controlling legal principles" before the state courts); Hiivala v. Wood, 195 F.3d 1098, 1106-07 (9th Cir. 1999) (recognizing that "general appeals to broad constitutional principles[] such as due process" and the "mere similarity between a claim of state and federal error" does not suffice); Adelson v. DiPaola, 131 F.3d 259, 262-64 (1st Cir. 1997) (concluding that "mere incantation of constitutional buzzwords, unaccompanied by any federal constitutional analysis, does not suffice to carry the burden of demonstrating fair presentment of a federal claim"). Because of the failure to exhaust, this Court cannot grant relief to Petitioner. See 28 U.S.C. 2254(b)(1) (stating that the habeas corpus cannot be

granted unless the petitioner "has exhausted the remedies available in the courts of the State").

The Court could stay or dismiss the case without prejudice to allow Petitioner to exhaust his state court remedies. However, there is no need to do so because his first claim for relief is procedurally barred. If Petitioner returned to the state courts to exhaust his claim by filing a motion for appropriate relief, he would find his claim procedurally barred by N.C. Gen. Stat. § 15A-1419 because he could have pursued the claim on direct appeal, but did not. This means that the claim is also procedurally barred from consideration in this Court. See O'Sullivan v. Boerckel, 526 U.S. 838, 847 (1999).

In his Response, Petitioner seeks to excuse this default by faulting his appellate counsel for failing to raise his claim under federal law on direct appeal. He appears to contend that this amounted to ineffective assistance of counsel on appeal. The Court may hear Petitioner's procedurally defaulted claims if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). Constitutionally ineffective assistance of counsel amounts to cause to excuse a procedurally defaulted claim. See Coleman, 501 U.S. at 753-54; Murray v. Carrier, 477 U.S. 478, 488 (1986). Therefore, the Court must determine whether or not the failure to raise Petitioner's claims on direct appeal in federal constitutional terms amounted to ineffective assistance.

In order to prove ineffective assistance of counsel generally, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense

attorneys and, second, that he was prejudiced by this performance. See Strickland v. Washington, 466 U.S. 668 (1984). With respect to the first prong, a petitioner bears the burden of affirmatively showing deficient performance. See Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994). With respect to the second prong, to establish prejudice, a petitioner must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694. Claims of ineffective assistance on appeal are also judged using the Strickland test. See Lawrence v. Branker, 517 F.3d 700, 708-09 (4th Cir. 2008). Appellate counsel need not raise on appeal every non-frivolous issue requested by a defendant. Jones v. Barnes, 463 U.S. 745 (1983); see also Smith v. Murray, 477 U.S. 527 (1986); Evans v. Thompson, 881 F.2d 117, 124 (4th Cir. 1989) (declaring that counsel pursued sound strategy when he "determined what he believed to be petitioner's most viable arguments and raised them on appeal"). Winnowing out weaker arguments to press forward with more important points is part of effective appellate advocacy. Jones, 463 U.S. at 751-52. Prejudice can be shown by demonstrating that "'counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.'" Bell v. Jarvis, 236 F.3d 149, 180 (4th Cir. 2000) (quoting Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994)).

Petitioner's state law argument that inadequate confirmatory tests were performed on the cocaine was raised by counsel and rejected by the North Carolina Court of Appeals. There is absolutely no indication that raising the claim in terms of federal law would have produced a different result. A state trial court's decision to allow evidence into the record violates federal law only if the decision violates a specific constitutional provision or results

in fundamental unfairness to a defendant. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Grundler v. North Carolina, 283 F.2d 798, 802 (4th Cir. 1960). Here, Petitioner points to no specific violation, but instead appears to rely upon fundamental unfairness. Petitioner's complaint is not that police failed to test the cocaine at all. Instead, he claims that the testing performed was insufficient. As set out above in the facts from the direct appeal, an agent with the State Bureau of Investigation preliminarily tested the three packages of cocaine separately, and each test result was consistent with cocaine. She then combined them and performed a different and more specific test, which showed cocaine and no other substances. Petitioner fails to explain how this level of testing resulted in any fundamental unfairness. This is particularly true given the packaging and location of the substances, as well as the presence of a firearm and the large amount of cash in the residence and on Petitioner's person. All indications from the evidence are that the substance in all three packages was exactly what it appeared to be, i.e., cocaine. Also, Petitioner provides no contrary evidence that the substance in any of the packages was not cocaine. In fact, he contends that he did not live in the residence and had nothing to do with the hidden packages of white powder. The nature of the substance in those packages is not even the key issue. For all of these reasons, the admission of the cocaine did not result in any fundamental unfairness to Petitioner. His claim has no merit and his attorney did not provide ineffective assistance or prejudice him by failing to raise it in federal constitutional terms. The claim is procedurally defaulted and meritless and should be denied for both of these reasons.

Petitioner's second claim for relief is that his sentence is grossly disproportionate in violation of the United States Constitution. This claim is also procedurally defaulted and meritless. Petitioner raised this claim for the first time in his MAR, which the state trial court denied for being procedurally barred by N.C. Gen. Stat. § 15A-1419(a)(3) because Petitioner could have raised his claim on direct appeal, but did not. Therefore, this claim is also barred in this Court. Boyd v. French, 147 F.3d 319 (4th Cir. 1998). Again, Petitioner seeks to fault counsel for not raising this claim on appeal. However, this claim has no merit. Petitioner received a sentence of 175 to 219 months of imprisonment for trafficking more than 1.7 kilograms of cocaine. Even harsher sentences survive proportionality review. See Harmelin v. Michigan, 501 U.S. 957 (1991) (upholding a sentence of life imprisonment without the possibility of parole for possession of 672.5 grams of cocaine even though the defendant had no prior felony convictions). Harsher sentences for other relatively minor crimes have also been upheld. See Ewing v. California, 538 U.S. 11 (2003) (upholding a sentence of 25 years to life for theft of golf clubs under a recidivist statute); Lockyer v. Andrade, 538 U.S. 63 (2003) (upholding two consecutive terms of 25 years to life for two counts of petty theft under a recidivist statute). Petitioner's sentence is in no way harsher than the sentences in those cases. Petitioner attempts to raise arguments about recent changes in drug sentencing in the federal courts. However, changes in federal statutes and the United States Sentencing Guidelines do not affect his state case or render it unconstitutional. Petitioner's second claim for relief should be denied as both procedurally barred and meritless.

Petitioner's third claim for relief actually appears to be two claims for relief, one of which alleges that he received ineffective assistance of counsel in several respects regarding the investigation of his case and another of which claims that he was denied his right to a consular visit under the Vienna Convention. He may also be claiming that his attorneys provided ineffective assistance by failing to protect his rights under the Vienna Convention.

Petitioner does not specifically set out the grounds for his ineffective assistance claim in his Petition. Instead, he points to his "collateral attacks" as setting out his grounds. However, the MAR court rejected those claims as procedurally barred. Those claims are also without merit. A review of Petitioner's state court documents which are attached to his Petition reveals that in his MAR, he accused trial counsel of failing to "investigate to the fullest" and present "the exculpatory evidences to the Court." (Petition, Exs., MAR at 11.) In support of this general contention, he specified only that counsel did not provide evidence showing that he lived at a different address. To support that contention, Petitioner attached to his MAR a copy of his driver's license showing an address of 3309 N. Elm. St. Apt. L, rather than 1409 Dorsey Street, where his arrest occurred, and a brief, notarized, but unsworn, letter from Eloy Salazar stating simply that Plaintiff lived at the Elm Street address rather than the Dorsey Street address. (Id., MAR, Exs.) In addition, in a Motion seeking reconsideration of the North Carolina Court of Appeals' denial of a writ of certiorari to review the denial of his MAR, Petitioner stated without support that Eloy Salazar owns 1409 Dorsey Street. He also made further unsupported claims that he never lived at 1409 Dorsey Street and that there were no bills or tax documents tying him to that location.

There are multiple problems with Petitioner's presentation of his claims, not the least of which is that they are mainly unsupported and that the evidence he does submit is of questionable admissibility. However, even if the evidence is evaluated and accepted, it still fails. Petitioner's arrest at 1409 Dorsey Street occurred on April 23, 2003, and officers claimed that he told them he had been living there with his family for three years. His driver's license was issued on November 29, 1999, or well more than three years prior to the arrest. Therefore, the address on the license is not inconsistent with his alleged statement that he moved to Dorsey Street three years prior to his arrest. On the other hand, there were significant connections between Dorsey Street and Petitioner. Not the least of these is that he and his entire family were present there at the time of the search, with no indication that anyone else was present. Further, the officers testified that Petitioner not only claimed to live there, but claimed possession of a firearm and $9,000 in cash located in the house. Finally, a vehicle title listing Petitioner as living at that address was located in the house. Petitioner provides no explanation as to how he, his family, his gun, his money, and his vehicle title which listed him as living there all ended up at 1409 Dorsey Street with no one else present at the time police arrived. A driver's license predating the time that Petitioner allegedly lived there and a conclusory and unsworn statement by the alleged owner of the house do not come close to challenging the strong evidence that Petitioner lived at, or at least controlled, 1409 Dorsey Street at the time of his arrest. He has not produced sufficient evidence to show that his trial attorney neglected to discover or present evidence that would have provided him with a viable defense or that his attorney prejudiced him in not presenting that evidence. Likewise, Petitioner's appellate attorney did not provide ineffective

assistance by failing to raise this claim, which means that the claims also remain procedurally barred as found by the MAR court.

As for Petitioner's Vienna Convention claim, it also fails. Petitioner, a Mexican citizen, appears to claim that the State deprived him of his right to visit with the Consul of his native country. Petitioner raised this claim in his MAR, at least in conclusory fashion, and the MAR court found the claim procedurally barred for failing to raise it on direct appeal. Petitioner now alleges ineffective assistance of counsel in relation to the claim. However, Petitioner cannot prevail on any ineffective assistance claim because he fails to demonstrate prejudice. Had his trial attorney secured a consular visit for Petitioner, Petitioner states that he would have "requested another counsel, a Mexican interpreter and an investigator." (Response at 9.) However, he points to nothing to show that any such requests would have been granted or, more importantly, that the granting of the requests would have changed the outcome of the case. See Murphy v. Netherland, 116 F.3d 97 (4th Cir. 1997). Therefore, his trial attorney did not perform deficiently or prejudice his case, and his appellate counsel did not provide ineffective assistance by failing to raise the issue on appeal. Petitioner's entire third claim for relief should be denied.

Petitioner's fourth claim asserts that the State violated his right to discovery materials under Brady v. Maryland, 373 U.S. 83 (1963). Brady and its progeny hold that the failure by the prosecution to disclose to the defense "evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Kyles v. Whitley, 514 U.S. 419, 431 (1995). Here, Petitioner claims that the prosecution withheld the fact that he never

lived at 1409 Dorsey Street. Petitioner presented this claim in his MAR, and the MAR court found the claim procedurally bared for failing to raise it on direct appeal. Petitioner now attempts to evade the procedural bar by again faulting counsel for failing to raise the issue at trial or on appeal. However, the claim is frivolous. Petitioner knew where he did or did not live. Therefore, if he did not live at 1409 Dorsey Street, this was not a matter that could be withheld from the defense. Moreover, Petitioner does not point to any particular document or piece of evidence that was allegedly withheld. This claim is utterly without merit and counsel could not have provided ineffective assistance by failing to raise it. The claim should be denied for being procedurally barred and, alternatively, on the merits.

Petitioner's fifth claim is that the trial court erred in admitting a handgun and ammunition into evidence when the only charges were drug charges and the items were not related to any drug activity. Petitioner raised this claim on appeal, but again failed to raise it under federal law. Therefore, this claim involves the same procedural bar issues as his first claim for relief. Substantively, it is also an evidentiary issue governed by the same law as Petitioner's first claim. Here, there appears to be no basis for excluding the firearm and ammunition. As the North Carolina Court of Appeals noted on direct review, North Carolina law allows the admission of firearms in drug dealing cases because of the common association with drugs and guns. Huerta, 727 S.E.2d. at 888-89. Federal law is in agreement as to this close association. See, e.g., United States v. Manigan, 592 F.3d 621, 629 (4th Cir. 2010) (discussing the frequent connection between firearms and drug dealing). Further, the North Carolina Court of Appeals also correctly noted that the admission of the firearm and ammunition created no reasonable probability of any prejudice to Petitioner because of the

- 13 -

strong evidence against him. Given this, it is understandable why counsel did not raise the claim in federal terms on appeal. There was no prejudice in any event. As with Petitioner's other claims, this claim is procedurally barred and without merit.

Finally, Petitioner's sixth claim for relief asserts that the trial court erred in denying a motion to dismiss based on insufficient evidence. As with his first and fifth claims, Petitioner raised this claim on direct appeal, but did so under state, not federal, law. Nevertheless, the United States Supreme Court holds that all insufficiency of the evidence claims state a federal constitutional claim. Jackson v. Virginia, 443 U.S. 307, 321 (1979). Therefore, this claim is not procedurally barred, but was instead properly raised in the state courts and decided on its merits by the North Carolina Court of Appeals. This means that this Court must apply a highly deferential standard of review in connection under 28 U.S.C. § 2254(d). More specifically, the Court may not grant relief unless the state court decision on the merits "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. "Clearly established Federal law" includes only "'holdings, as opposed to the dicta,'" of the United States Supreme Court. White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (quoting Howes v. Fields, 132 S. Ct. 1181, 1187 (2012)). A state court decision is "contrary to" United States Supreme Court precedent if the state court decision either "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law" or "confronts a set of facts that are materially indistinguishable from a decision of [the United States Supreme] Court and nevertheless arrives at a result different"

from the United States Supreme Court. Williams v. Taylor, 529 U.S. 362, 406 (2000). A state court decision involves an "unreasonable application" of Supreme Court case law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407; see also id. at 409–11 (explaining that "unreasonable" does not mean merely "incorrect" or "erroneous"). "[E]ven 'clear error' will not suffice." White, 134 S. Ct. at 1702 (citing Lockyer v. Andrade, 538 U.S. 63, 75–76 (2003)). "Rather, 'as a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Id. (quoting Harrington v. Richter, 562 U.S. ___, ___, 131 S.Ct. 770, 786–787 (2011)). Finally, this Court must presume state court findings of fact correct unless clear and convincing evidence rebuts them. 28 U.S.C. § 2254(e)(1).

A claim alleging insufficiency of the evidence cannot succeed in a habeas corpus action if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (emphasis in the original). A court reviewing the sufficiency of the evidence "must consider circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982). "[C]ircumstantial evidence may support a verdict of guilty, even though it does not exclude every reasonable hypothesis consistent with innocence." United States v. George, 568 F.2d

1064, 1069 (4th Cir. 1978). Taking the dictates of § 2254(d) into account, the key question becomes "whether a state court determination that the evidence was sufficient to support a conviction was an objectively unreasonable application of the standard enunciated in Jackson." Williams v. Ozmint, 494 F.3d 478, 489 (4th Cir. 2007) (internal brackets and quotation marks omitted).

In denying Petitioner's insufficiency claim, the North Carolina Court of Appeals held as follows:

*1. Trafficking by Possession*

As we have already noted, Defendant was convicted of trafficking in more than 400 grams of cocaine by possession and maintaining a house for the purpose of keeping or selling controlled substances. "'To prove the offense of trafficking in cocaine by possession, the State must show 1) knowing possession of cocaine and 2) that the amount possessed was [400] grams or more.'" State v. Acolatse, 158 N.C. App. 485, 488, 581 S.E.2d 807, 809 (2003) (quoting State v. White, 104 N.C. App. 165, 168, 408 S.E.2d 871, 873–74 (1991)). In his brief, Defendant argues that the State did not prove that he possessed the cocaine seized from his residence.

"Possession can be actual or constructive. When the defendant does not have actual possession, but has the power and intent to control the use or disposition of the substance, he is said to have constructive possession." State v. Baldwin, 161 N.C. App. 382, 391, 588 S.E.2d 497, 504–05 (2003) (citing State v. Butler, 356 N.C. 141, 146, 567 S.E.2d 137, 140 (2002) (other citation omitted)). "'Where such materials are found on the premises under the control of an accused, this fact, in and of itself, gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury on a charge of unlawful possession.' 'However, unless the person has exclusive possession of the place where the narcotics are found, the State must show other incriminating circumstances before constructive possession may be inferred.'" State v. Hough, 202 N.C. App. 674, 685, 690 S.E.2d 285, 292 (2010) (quoting State v. Harvey, 281 N.C. 1, 12, 187 S.E.2d 706, 714 (1972), and State v. Davis, 325 N.C. 693, 697, 386 S.E.2d 187, 190 (1989)). "Our cases addressing constructive possession have tended to turn on the specific facts presented." State v. Miller, 363 N.C. 96, 99, 678 S.E.2d 592, 594 (2009). As a result:

> "North Carolina courts have cited a variety of factors that may be used in conjunction with the defendant's presence near the seized contraband to support a finding of constructive possession." "[C]onstructive possession depends on the totality of circumstances in each case," so that "[n]o single factor controls."

State v. Ferguson, 204 N.C. App. 451, 460, 694 S.E.2d 470, 477 (2010) (quoting State v. Fortney, 201 N.C. App. 662, 668, 687 S.E.2d 518, 523 (2010), and State v. James, 81 N.C. App. 91, 93, 344 S.E.2d 77, 79 (1986)). Assuming, without in any way deciding, that Defendant's home was not under his exclusive control, the record contains more than sufficient evidence tending to show the existence of the additional incriminating circumstances needed to permit the submission of the issue of Defendant's guilt of trafficking by possession to the jury on the basis of a constructive possession theory.

The evidence developed at trial, viewed in the light most favorable to the State, tended to show that: (1) in 2002, the Greensboro Police Department received an anonymous tip that drug sales were occurring at 1409 Dorsey Street; (2) in 2003, information concerning activities allegedly occurring at the same address emerged during a DEA investigation; (3) when law enforcement officers went to the Dorsey Street address on 23 April 2003, Defendant was present and admitted that he had lived there with his wife and children for the past three years; (4) Defendant had a .40 caliber pistol, which he admitted having purchased illegally; ammunition; and more than $9,000.00 in cash in his bedroom closet; (5) Defendant had more than $2,000.00 in cash on his person; (6) almost two kilograms of powder cocaine worth more than $50,000.00 in 2003 dollars were discovered within easy reach of an opening leading from the hallway area of Defendant's home to the attic; and (7) the house in question was "very small" and had no residents other than Defendant and his family. We have no difficulty whatsoever in concluding that this evidence sufficed to support a determination that Defendant constructively possessed the cocaine found in his attic.

In seeking to persuade us to reach a contrary conclusion, Defendant cites certain evidence that he contends would support a contrary finding, such as, for example, the fact that Defendant's fingerprints did not appear on the material with which the cocaine was packaged. However, "[o]n review of a denial of a motion to dismiss, this Court must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences," so that "[c]ontradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve." State v. Steele, 201 N.C. App. 689, 692, 689 S.E.2d 155, 158 (2010) (citing State v. Scott, 356 N.C. 591, 596, 573 S.E.2d 866, 869 (2002)).

In addition, Defendant makes several assertions which lack adequate record support. For example, Defendant contends that "there was evidence that other people lived at the residence as well." Although investigating officers did find several documents bearing the names of other people, including a vehicle title issued to Pedro Huerta Hernandez, one of Defendant's relatives, located in Defendant's bedroom closet alongside a vehicle title issued to Defendant; an identification card bearing information concerning Pedro Huerta Hernandez; and certain receipts and documents bearing the name of Defendant's landlord in the Dorsey Street residence, the house did not contain any clothing, furnishings, or personal possessions that belonged to anyone other than Defendant and his family. Moreover, Defendant never claimed at any point during his conversations with investigating officers that anyone else lived in the Dorsey Street residence. When considered in context, such evidence does not show "that other people lived at the residence." Similarly, Defendant stresses the existence of a "third bedroom" and argues that "another person could have been living in the third bedroom, the room in which the attic was located where the cocaine was found." However, the record contains no evidence definitively establishing that there was a third bedroom in the Dorsey Street residence. Moreover, the uncontradicted evidence shows that the attic was accessed from the hallway, rather than a bedroom. Finally, even if the record did contain evidence suggesting the presence of a third bedroom or the possibility that another person might have resided at the Dorsey Street residence, that set of facts does not tend to show that the State failed to elicit sufficient evidence that Defendant possessed a sufficient quantity of cocaine to successfully withstand a motion to dismiss for insufficiency of the evidence. Thus, the trial court did not err by declining to dismiss the trafficking by possession charge.

*2. Maintaining a Dwelling for Using or Keeping Drugs*

Secondly, Defendant was convicted of violating N.C. Gen. Stat. § 90–108(a)(7), which makes it "unlawful for any person" to "knowingly keep or maintain any ... dwelling house, building, ... or any place whatever, which is resorted to by persons using controlled substances in violation of this Article for the purpose of using such substances, or which is used for the keeping or selling of the same[.]" In challenging the sufficiency of the evidence to support his conviction for maintaining a dwelling for keeping controlled substances, Defendant questions "whether the State presented sufficient evidence that [Defendant] knew about the drugs in his attic." As we recently noted in addressing a similar contention, however, "our conclusion that the State presented substantial evidence to show Defendant was in constructive possession of the marijuana disposes of this argument." State v. Hudson, 206 N.C. App. 482, 492, 696 S.E.2d 577, 584, disc. review denied, 364 N.C. 619,

705 S.E.2d 360 (2010). Thus, given our previous determination that the State presented sufficient evidence to support a finding that Defendant constructively possessed the cocaine at issue in this case, we necessarily conclude that the trial court did not err by denying Defendant's motion to dismiss the maintaining a dwelling for the purpose of keeping or selling controlled substances charge that had been lodged against him for insufficiency of the evidence.

Huerta, 727 S.E.2d at 889-91.

In no way was the North Carolina Court of Appeal's decision contrary to, or an unreasonable application of, the standard set out in Jackson. For the reasons set out by that Court, the evidence was far more than sufficient to allow a rational trier of fact to convict Petitioner. Therefore, his sixth claim for relief should be denied.

IT IS ORDERED that Respondent's Motion for Leave to File Excess Pages [Doc. #6] is GRANTED.

IT IS RECOMMENDED that Respondent's Motion for Summary Judgment [Doc. #5] be granted, that the Petition [Doc. #2] be denied, and that this action be dismissed.

This, the 26th day of March, 2015.

                                            /s/ Joi Elizabeth Peake
                                               United States Magistrate Judge